IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| JEANNIE L. COSBY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | No. 5:09-CV-192 (CAR) |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

**ORDER**

This case concerns Plaintiff Jeannie L. Cosby's medical treatment, or alleged lack thereof, by the United States Marshals' Services ("USMS") and the Bureau of Prisons ("BOP") while she was detained in the Irwin County Detention Center ("ICDC") in Ocilla, Georgia, the Paulding County Jail ("PCDC") in Dallas, Georgia, the Federal Transfer Center ("FTC") in Oklahoma City, and the Federal Medical Center Carswell ("FMC Carswell") in Fort Worth, Texas, from November 2, 2007, until January 14, 2008. Plaintiff alleges that the USMS and the BOP failed to provide recommended medical care, and that the USMS failed to follow the transfer procedures designated for prisoners with a serious medical need, in violation of the

1

Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680.  Plaintiff contends that their negligence caused her right foot to be partially amputated due to gangrene.

The issue before the Court is whether Plaintiff's claims are barred by the discretionary function exception of the FTCA, thereby precluding the Court of subject matter jurisdiction.  In the Court's Summary Judgment Order, the parties were directed to brief the applicability of this issue.  Both parties have timely done so, and the matter is now ripe for consideration.[1]

For the complete background of this case, see the Court's Order on Defendant's Motion for Summary Judgment [Doc. 57].

I.

Under the FTCA, the government waives its immunity to tortious actions by its employees committed within the scope of their employment.  <u>Nguyen v. United States</u>, 556 F.3d 1244, 1250–51 (11th Cir. 2009).  However, the discretionary function exception precludes government liability for "[a]ny claim based upon ... the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or employee of the Government, whether or not the

---

[1] Initially, the parties focused their responses on Plaintiff's claims against the USMS and her time at ICDC.  In light of the objection raised in Plaintiff's first response, the Court directed a second response regarding the exception's applicability to Plaintiff's claims against the BOP and her detention at the FTC, and FMC Carswell.

2

discretion involved be abused." 12 U.S.C. § 2680(a).  "When the discretionary function exception to the FTCA applies, no federal subject matter jurisdiction exists." United States Aviation Underwriters, Inc. v. United States, 562 F.3d 1297, 1299 (11th Cir. 2009).

"Although a plaintiff bears the initial burden of proving subject matter jurisdiction, the burden of proving the applicability of the discretionary function exception … falls upon the United States." Sexton v. United States, 132 F. Supp. 2d 967, 971-72 (M.D. Fla. 2000).  The Supreme Court established a two-part test to determine if the discretionary function exception applies.  First, courts must determine whether an act "involv[es] an element of judgment or choice." United States v. Gaubert, 499 U.S. 315, 322, 111 S. Ct. 1267, 1273 (1991).  "The requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" Aviation Underwriters, 562 F.3d at 1299 (quoting Berkovitz v. United States, 486 U.S. 531, 536, 108 S. Ct. 1954, 1958-59 (1988)).

If a court decides the act did involve an element of judgment or choice, then it must determine "whether that judgment is of the kind that the discretionary function

3

exception was designed to shield." Id. "[T]he Supreme Court has characterized the ultimate question as whether the 'challenged acts ... are of the nature and quality that Congress intended to shield from tort liability.'" Aviation Underwriters, 562 F.3d at 1299 (quoting United States v. S.A. Empresa de Viacao Aerea Rio Grandense, 467 U.S. 797, 813, 104 S. Ct. 2755, 2674 (1984)).

II.

Plaintiff asserts that the USMS and the BOP were both negligent while she was in their custody. The Court will separately consider Plaintiff's claims.

United States Marshals Service

Plaintiff argues that the USMS violated its own nondiscretionary policies when she was in USMS custody at ICDC and PCDC by (1) failing to treat her limb threatening condition, and (2) failing to follow transfer procedures that require inmates with a severe medical condition to stay at a temporary medical facility until the serious medical problem is addressed. In support, Plaintiff cites to Directive 9.4 of the USMS Directives for Prisoner Operations which governs prisoner health care.

Plaintiff first contends that Directive 9.4 articulates a nondelegable, nondiscretionary policy to provide treatment to Plaintiff pursuant to Dr. McMahan's recommendations. In general, Directive 9.4 requires that the USMS determine "what

4

additional steps are needed" when a prisoner has a serious or terminal illness. [Doc. 48-6, p. 1]. In part, the USMS is required to "acquire and pay for reasonable and medically necessary care." [Id. at 1]. Additionally, "limb-threatening conditions [and] chronic conditions [that,] … if left untreated[,] would likely lead to a significant loss of function" are predetermined by the USMS to "requir[e] treatment." [Id. at 2].

Plaintiff also asserts that Directive 9.4 provides a specific transfer requirement that the USMS is mandated to follow when a prisoner has a severe medical condition. Directive 9.4 requires that the USM district management "review all USMS prisoner medical needs prior to placement at a detention facility, whether in district or [in a holdover facility]." [Id. at 3]. Additionally, "[p]risoners with serious chronic medical conditions or acute care needs should be evaluated for transfer based upon their medical needs and continuity of care requirements." [Id. at 4]. The USMS will "ensure proper [transfer] arrangements are made" for these prisoners. Id.

In considering the first prong of Gaubert, Directive 9.4 clearly indicates that it is within the USM's discretion to determine what additional steps are needed when a prisoner has a serious illness. Moreover, even though Plaintiff's condition may "require[e] treatment," the USMS's decision regarding the scope and extent of her medical treatment inherently involves an element of choice. The Directives also do not

5

provide a specific course of action that the USMS is required to precisely follow when transferring a prisoner has a serious medical need. Rather, the Directives contemplate that the USMS exercise its judgment and discretion in determining what arrangements are "proper." Thus, the Court finds that the first prong of Gaubert is satisfied.

In considering the second prong, the Court finds that the judgment exercised by the USMS is the kind of judgment that the discretionary exception was designed to shield because the decision is grounded in several policy considerations. First, a decision of what constitutes appropriate medical treatment requires that the USMS also consider the appropriate allocation of its finite resources. Moreover, security and logistical concerns are also conceivably relevant in the USMS's decision regarding whether and when to provide medical treatment. See Bevley v. United States, No. Civ. A. 00-0007, 2001 WL 294052, at *4 (E.D. La. Mar. 23, 2001) (holding that USMS decision to deny inmate's request for medical attention was grounded on economic, security, and transportation logistics).

Similarly, a decision to transfer Plaintiff involves consideration of similar logistics, including transportation, the prisoner's medical needs, and bed space. See Bethae v. United States, 465 F. Supp. 2d 575, 583 (D.S.C. 2006) (considering such factors as bed space, proximity to federal courthouse, transportation burden, and

6

detainee's medical needs). Even though Plaintiff may qualify as a prisoner with a serious medical need, it is apparent that the extent of Plaintiff's medical need is only one of several factors that the USMS must consider. Accordingly, the Court finds that the USMS's decisions involved judgment and discretion, and were made based on considerations of public policy. Thus, the discretionary function exception applies to Plaintiff's claims against the USMS.

Bureau of Prisons

Plaintiff next argues that the BOP was negligent for failing to have its medical staff comply with Dr. McMahan's recommended course of treatment for Plaintiff while she was at FTC and FMC Carswell. Section 4042 of Title 18 of the United States Code provides, in relevant part that, "[t]he Bureau of Prisons, under the direction of the Attorney General, shall ... provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2). Under § 4042, the BOP has a duty to provide for the care of its prisoners, but "retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception." Cohen v. United States, 151 F.3d 1338, 1342 (11th Cir. 1998) (holding that the BOP had discretion in the way it classified prisoners).

7

In this case, similar to the Court's analysis of Plaintiff's claims against the USMS, the BOP decisions to provide medical care to prisoners inherently involves an element of choice and is grounded in several policy considerations, including allocation of finite resources.  See Preston v. United States, No. 1:08-cv-2493-CAM, 2010 WL 2975631, at *3-4 (acknowledging that § 4042 does not "dictate the manner" in which bunk beds are to be installed and concluding that decision to not install ladders was grounded in public policy).  Accordingly, the Court concludes that the BOP's decision involved judgment and discretion, and was made based upon public policy considerations.

### III.

As set forth above, the Court concludes that it is without jurisdiction to entertain Plaintiff's FTCA claims against the United States.  Accordingly, the instant action is **DISMISSED**.

**SO ORDERED,** this  14th day of May, 2012.

S/  C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

LMH